*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

## MEMORANDUM OPINION

No. 04-08-00274-CR

James Pemberton **STEWART**,
Appellant

v.

**STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2007-CRN-000011-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:      Karen Angelini, Justice
              Sandee Bryan Marion, Justice
              Phylis J. Speedlin, Justice

Delivered and Filed:   July 22, 2009

AFFIRMED

A jury convicted appellant James Pemberton Stewart of murder and assessed punishment at fifty years imprisonment. At trial, five videotapes containing oral statements made by Stewart were admitted into evidence. On appeal, Stewart argues the trial court erred in denying his motion to suppress these videotaped recordings. We conclude the trial court did not err in denying Stewart's motion to suppress, and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2006, at around 4:20 p.m., a woman called the Laredo Police Department and reported that her ex-husband, Jorge Enrique Guerra, had just fired a gun outside her residence. Police officers were dispatched to the residence where they found three spent .38 caliber casings. After talking to the woman, police radioed other officers to be on the lookout for a red Jeep Cherokee with possibly armed suspects. Some officers went to the street of Guerra's last known address, where they, within ten minutes of the radio alert, encountered and pulled over a red Jeep Cherokee with two occupants. The passenger was identified as Guerra; the driver was identified as Stewart. A search of the car revealed two loaded handguns, a .38 caliber and a .25 caliber. Guerra and Stewart were arrested for unlawful carrying of a weapon, and were taken to the police department for booking. Guerra and Stewart were also suspects in the deadly conduct offense initially reported by the woman.

Homicide investigator Luis Martinez heard the radio dispatches leading up to Guerra's and Stewart's arrests. The presence of a .38 caliber handgun and a .25 caliber handgun sparked Martinez's interest in Guerra and Stewart. At the time, Martinez was investigating the gang-related murder of Juan Carlos Iruegas, who had been shot to death in Laredo a week earlier. Witnesses to the murder stated that three unknown individuals ran away from the scene after multiple gunshots were fired, and .38 caliber casings and .25 caliber casings were found at the murder scene. After confirming that Guerra was a gang member, Martinez asked the arresting officers to hold Guerra and Stewart so he could interview them about the Iruegas murder.

Over the next twelve hours, Guerra and Stewart were questioned intermittently by police. On two occasions, Guerra and Stewart were allowed to talk to each other outside the presence of an

officer. Police recorded portions of these interviews and conversations by videotape. In some of the videotaped recordings, Stewart implicates himself in Iruegas's fatal shooting.

After Stewart was indicted for Iruegas's murder, he filed a motion to suppress his oral statements to the police. In this motion, Stewart asserted his oral statements were inadmissible at trial because they were not made voluntarily or without compulsion or persuasion in violation of article 38.21 of the Texas Code of Criminal Procedure; they were not taken in compliance with article 38.22, section 3 of the Texas Code of Criminal Procedure; and they were made after Stewart had invoked his right to counsel. The suppression motion was denied, and the trial court made findings of fact, which provide in relevant part:

> 7. JAMES P. STEWART, IV had the Miranda warnings and requirements of 38.22 read to him by the investigators from the Laredo Police Department. Defendant Stewart signed off and initialed the form acknowledging that the said required admonishments had been read to him.
>
> ....
>
> 13. JAMES P. STEWART IV, on the video, acknowledged to Inv. Martinez that his Miranda rights and those required by 38.22 had been read to him earlier. Mr. Stewart pointed to a paper that in fact contained the rights and admonishments that had been read and signed by him earlier in the interview. On another video (disc 10) Mr. STEWART in fact is read Miranda warnings and 38.22 requirements read to him on the video.
>
> ....
>
> 15. The individual voice on the video could be, and were, identified by the investigator Martinez from the Laredo Police Department.
>
> 16. Mr. Stewart did not ask for a lawyer on the video tape or during the interview according to Inv. Martinez.
>
> 17. Inv. Martinez seemed very credible to this Court.
>
> 18. [] Mr. STEWART ['s] statements both written and verbal were voluntary.

19. Neither Mr. GUERRA or MR. STEWART were in custody for the Murder charges herein charged while the questioning was [taking] place.

....

23. No statements were made by the police to the defendants that this court believes would entice a defendant to not be truthful in [their] statements to the police.

24. The recording reflects that both defendants were read the Miranda warnings, knowingly waived [their] rights and that the statements made were given knowingly and voluntarily without coercion, compulsion, force, threats, or promises;

25. Therefore, the Defendant's statements, written and recorded, are admissible in evidence in the trial of this case on its merits.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence affording almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). For mixed questions of law and fact that turn on an evaluation of credibility and demeanor, we also defer to the trial court's ruling. *Id*. However, if the resolution of ultimate questions does not turn on an evaluation of credibility and demeanor, we review mixed questions of law and fact de novo. *Id*. An appellate court must uphold the trial court's suppression ruling if it is correct under any theory applicable to the case. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

## INITIAL SEARCH AND ARREST

In his first issue, Stewart argues his conviction should be reversed because he was arrested as a result of a warrantless search; however, Stewart fails to cite any authority to support his argument. Rule 38.1(i) requires an appellant's brief to contain appropriate citations to authorities.

TEX. R. APP. P. 38.1(i). We, therefore, overrule issue one as inadequately briefed. *See Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005) (overruling issue as inadequately briefed when appellant failed to comply with the requirements of former Rule 38.1(h)).

### ARTICLE 38.22, SECTION 3(A) REQUIREMENTS

Article 38.22 of the Texas Code of Criminal Procedure governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Article 38.22 does not preclude the admission of a statement that does not stem from custodial interrogation. *Id*. at 525. The defendant bears the initial burden of proving that a statement was the product of custodial interrogation. *Id*. at 524-25 n. 10.

Under article 38.22, section 3(a) of the Texas Code of Criminal Procedure, a defendant's oral statement made as a result of custodial interrogation is not admissible unless specific requirements are met. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon 2005). First, an electronic recording, which may include a videotape, must be made of the oral statement. *Id*. § 3(a)(1). Second, the recording must be accurate and not altered. *Id*. § 3(a)(3). Third, all voices on the recording must be identified. *Id*. § 3(a)(4). Finally, prior to the oral statement, but during the recording, the defendant must be given the warning set out in section 2(a), and the defendant must knowingly, intelligently, and voluntarily waive the rights set out in the warning. *Id*. § 3(a)(2). The statute requires courts to strictly construe these requirements, except that only voices that are material must be identified, and instead of the warning set out in section 2(a) the defendant may be given its "fully effective equivalent." *Id*. § 3(e). Additionally, the statute does not require the recording to show an

express verbal waiver of rights by the defendant. *Etheridge v. State*, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994) (citing *Barefield v. State*, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989), *overruled on other grounds*, *Zimmerman v. State*, 860 S.W.2d 89, 94 (Tex. Crim. App. 1993)).

The section 2(a) warning requires the defendant be advised (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial, (2) any statement he makes may be used as evidence against him in court, (3) he has the right to have a lawyer present to advise him prior to and during any questioning, (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning, and (5) he has the right to terminate the interview at any time. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (Vernon 2005). The section 2(a) warning is virtually identical to the *Miranda* warning, with one exception—the admonition that an accused has the right to terminate the interview at any time. *Herrera*, 241 S.W.3d at 526.

Here, the trial court found Stewart was not in custody for purposes of article 38.22, section 3(a), and the requirements of article 38.22, section 3(a) were satisfied. In his second and third issues, Stewart challenges both findings, arguing the videotaped oral statements should have been suppressed because he was in custody, and the police failed to comply with the requirements of article 38.22, section 3(a) of the Texas Code of Criminal Procedure. In response, the State argues the trial court properly refused to suppress the videotaped oral statements, arguing Stewart was not in custody as to the murder charge for purposes of article 38.22. *See Herrera*, 241 S.W.3d at 531 (holding incarceration does not always constitute custody when an inmate is questioned by law enforcement officials regarding an offense separate and distinct from the offense for which he was incarcerated). Alternatively, the State argues even if Stewart was in custody as to the murder charge,

the oral statements were taken in compliance with the requirements of article 38.22, section 3(a) and, therefore, were admissible.

At the suppression hearing, Martinez testified he read the section 2(a) warning to Stewart from a document at 5:30 p.m. on August 20, 2006, and Stewart initialed each and every right enumerated on the document. The trial court admitted into evidence the document, which includes the 2(a) warning in its entirety. The trial court also admitted into evidence the videotapes containing oral statements made by both Stewart and Guerra.

Stewart's arguments apply to three of the videotapes, which we discuss in chronological order.[1] At the beginning of "Videotape Eight," the following exchange takes place:

Martinez:    "Do you remember those rights I told you about, right?"

Stewart:    "Yeah. The right to remain silent and all that sh**."

Martinez:    "You know all those, right? You remember?"

---

[1] Stewart complains of two other videotapes, which do not show Stewart making any oral statement as a result of custodial interrogation, and thus, the requirements of article 38.22, section 3(a) do not apply.

"Videotape Seven," which is the first recording, shows Guerra being given the section 2(a) warning and then being questioned by an investigator. Article 38.22, section 3(a) precludes the admission of oral statements by an accused that do not comply with the requirements of the statute; it does not address the admission of oral statements made by a co-defendant. *See* CRIM. PROC. CODE ANN. art. 38.22, § 3(a) (Vernon 2005). Later, the videotape shows Stewart and Guerra talking alone. Although Stewart contends Guerra was acting as a law enforcement agent during this recording, there is no evidence in the record to support this contention.

"Videotape Thirteen," which is the final recording, again shows Stewart and Guerra talking to each other outside the presence of any officers. Later, the videotape shows Stewart and another investigator talking for about ten minutes. During the conversation, the investigator informs Stewart the interview is over and gives Stewart information about Guerra's purported gang affiliation. Even if Stewart's statements could be construed as stemming from custodial interrogation, they are made less than an hour after Stewart was last reminded of the rights set out in section 2(a).

Stewart:        "Yeah. They are right there."

                [Stewart picks up a document on the table.]

Martinez:       "You understand all those rights?"

Stewart:        "Yeah."

Thus, this videotape shows Stewart picking up a document containing the section 2(a) warning, and affirmatively acknowledging his understanding of the section 2(a) warning. The next videotape, "Videotape Ten" shows Martinez reading the full section 2(a) warning to Stewart from a document. "Videotape Ten" shows Martinez asking Stewart if he understands his rights, and Stewart saying, "Yes, sir." "Videotape Ten" then shows Stewart placing his initials on the document by each enumerated right, and signing the document. "Videotape Twelve" shows an investigator exhibiting a document and stating the document contains Stewart's rights—the same ones read to him before. "Videotape Twelve" then shows the investigator asking Stewart if he still understands his rights or if he wants the officers to read them to him again, and shows Stewart indicating he does not want his rights read to him again.

After reviewing these videotapes and Martinez's testimony, we are of the opinion the trial court could have reasonably concluded Stewart was given the section 2(a) warning or its fully effective equivalent, and Stewart knowingly, intelligently, and voluntarily waived the rights set out in the warning. *See Flemming v. State*, 949 S.W.2d 876, 880 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding recording was admissible when first portion reflected full warnings, recording stopped, and recording resumed with accused acknowledging that warnings had been given); *Franks v. State*, 712 S.W.2d 858, 861 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (holding recording

was admissible when during recording accused acknowledged he had been advised of his rights during an earlier phase of the interrogation not included on the recording).

Next, Stewart argues the videotapes did not satisfy the requirement that the recordings be accurate and not altered. *See* CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(3) (Vernon 2005). At the suppression hearing, Martinez testified that the recordings accurately reflected the conversations that took place and had not been altered in any way. Martinez's testimony was not controverted. From this evidence, the trial court could have reasonably concluded the requirement that the videotape be accurate and not altered was satisfied. *See Maldonado v. State*, 998 S.W.2d 239, 245-46 (Tex. Crim. App. 1999) (holding the trial court did not err in refusing to suppress a recorded statement when the evidence supported the conclusion that the recording was accurate and had not been impermissibly altered).

Finally, Stewart argues the videotapes did not satisfy the requirement that all of the material voices on the videotapes be identified. *See* CODE CRIM. PROC. ANN. 38.22, § 3(a)(4),(e)(1) (Vernon 2005). Identification of the voices by a witness at trial is sufficient to satisfy this requirement. *See Petry v. State*, No. 01-86-00517-CR, 1987 WL 14550, at *2 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (not designated for publication). At trial, Martinez identified the material voices on the videotaped recordings.

We conclude the requirements of article 38.22, section 3(a) were satisfied in this case. Having determined the requirements of article 38.22, section 3(a) were satisfied, we need not decide if the trial court erred in its custody determination. For purposes of article 38.22, the statements were admissible regardless of whether Stewart was in custody as to the murder charge. Issues two and three are overruled.

## RIGHT TO COUNSEL

"Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States*, 512 U.S. 452, 459 (1994) (*quoting McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). Not every mention of a lawyer will suffice to invoke the Fifth Amendment right to the presence of counsel during questioning. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). An ambiguous or equivocal statement with respect to counsel does not even require an officer to seek clarification, much less halt an interrogation. *Id*. Whether the mention of a lawyer constitutes a clear invocation of the right to counsel will depend upon the statement itself and the totality of the circumstances. *Id*. The test is an objective one; in other words, the suspect must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement as a request for an attorney. *Id*. at 893 (citing *Davis*, 512 U.S. at 458-59).

At the suppression hearing, Stewart testified that during questioning he told Martinez that his father was an attorney and he asked to speak to his father. Martinez also testified that Stewart asked to speak to his father, but said Stewart never indicated his father was an attorney. The videotapes show Stewart asking to speak to his father, but they do not show Stewart saying his father is an attorney. No evidence was introduced to show that Martinez, at the time of the questioning, knew Stewart's father was an attorney. After viewing the record in the light most favorable to the trial court's ruling and deferring to its credibility determinations, we cannot say the trial court erred in finding Stewart did not invoke his right to counsel. Based on the totality of the circumstances, the record does not show that Stewart articulated his desire to have counsel present sufficiently clearly

that a reasonable police officer would understand Stewart's statement as a request for an attorney. Issue four is overruled.

### IMPROPER INDUCEMENT

In his fifth issue, Stewart contends his videotaped statements were improperly induced by Martinez's promise that Stewart could go home after the interview. Before a promise will render a confession inadmissible, it must be shown that the promise induced the confession. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). In order to induce the confession, the promise must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that it would cause a defendant to speak untruthfully. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004); *Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997).

Here, the State does not dispute that the promise was positive and made by someone in authority. However, the State does dispute that the promise was of such an influential nature that it would likely cause a defendant to confess. The record shows Stewart was also told that even if he did go home for the night, he would possibly be arrested for the murder after the case was submitted to the district attorney's office and a warrant issued. Under these circumstances, the benefit to Stewart was slight when compared to the detriment of admitting to a crime as serious as murder. *See Muniz*, 851 S.W.2d at 254 (considering the nature of the crime and the perceived benefit of accepting the promise in evaluating the third element of the test). Even assuming the alleged promise in this case was positive and made by someone in authority, we conclude it was not of such an influential nature as to cause Stewart to confess. *See id.* (concluding officer's promise to contact charitable agencies to help the defendant's mother and wife did not induce confession to a heinous rape and murder). Issue five is overruled.

## VOLUNTARINESS

In his sixth issue, Stewart argues the oral statements he made were involuntary and violated his due process rights because the statements were the product of coercion and duress on the part of police. "Voluntariness is decided by considering the totality of the circumstances under which the statement was obtained." *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997). The ultimate question is whether the defendant's will was "overborne" by police coercion. *Id*. at 856. In answering this question, courts may consider various factors, including the length of detention, incommunicado or prolonged detention, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality. *Nenno v. State*, 970 S.W.2d 549, 557 (Tex. Crim. App. 1998), *overruled on other grounds*, *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999).

Here, Stewart complains his oral statements were involuntary because he was deprived of water, food, medication, and bathroom access over the course of twelve hours. In this case, the issue of voluntariness turns on an evaluation of credibility and demeanor. At the suppression hearing, Stewart testified he was denied water, food, and medication during the interview. By contrast, Martinez testified Stewart was not denied water, food, and bathroom access. Martinez did not recall Stewart ever requesting any medication. Consistent with part of Martinez's testimony, one of the videotapes shows a bottle of water on the table, Martinez offering Stewart the bottle of water, and Stewart refusing it. The bottle of water remains on the table in subsequent videotapes. After viewing the record in the light most favorable to the trial court's ruling and deferring to its credibility determinations, we cannot say the trial court erred by finding that Stewart's oral statements were voluntarily given. Issue six is overruled.

**CONCLUSION**

The judgment of the trial court is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH