COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-08-00098-CR | |
| | § | | |
| Appellant, | | Appeal from | |
| | § | | |
| v. | | 171st District Court | |
| | § | | |
| JOSE MARTINEZ, | | of El Paso County, Texas | |
| | § | | |
| Appellee. | | (TC # 20060D05169) | |
| | § | | |

**O P I N I O N**

The State of Texas appeals an order granting Jose Martinez's motion to suppress his video-recorded statement. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

On September 10, 2006, the El Paso Police Department arrested Martinez for the capital murder of Jose Antonio Campa and transported him to the Crimes Against Persons office. Campa's body had been found the previous day at an intersection in El Paso. Because Martinez did not speak English, Detective Enriquez Gutierrez, who is fluent in Spanish, was assigned to interview Martinez. Detective Arturo Ruiz also attended the interview. Gutierrez's initial task was to administer the *Miranda*[1] warnings to Martinez and determine whether he wished to make a recorded statement.[2] Martinez indicated to Gutierrez that he understood his rights and wished to give a recorded

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[2] Gutierrez referred to this as the "pre-interview."

statement. Approximately half an hour elapsed while the detectives set up the room for the recorded interview. Gutierrez then began the video-recorded interview of Martinez. Gutierrez again administered the *Miranda* warnings and Martinez indicated, as he had earlier, that he understood his rights. After some discussion about his right to court-appointed counsel, Martinez told Gutierrez that he wanted to give his statement. Martinez then confessed to beating and kicking Campa and running over him with a car.

Martinez filed a motion to suppress his video-recorded statement on the ground that he had been interrogated after he clearly and unequivocally invoked his Fifth Amendment right to counsel. Both the State and Martinez obtained written Spanish-to-English translations of the video-recorded statement. The State filed its translation prior to the pre-trial hearing, but Martinez did not file his translation until after the suppression hearing.

At the hearing, the State argued that neither translation reflected that Martinez had clearly and unequivocally invoked his right to counsel. The detectives sought to clarify whether Martinez had invoked his right to counsel by asking a question about court-appointed counsel, and after the detectives clarified that Martinez was not invoking his right to counsel, Martinez told them he wanted to proceed with giving a statement. The pertinent portion of the translation offered by the State reads as follows:

> [Gutierrez]: Ok. Jose. A moment ago we talked to you, we explained your rights to you. We asked you if you wanted to talk to an attorney or with your Mexican Consulate and you said no. That you wanted to talk to us and that we wanted to talk to you and that you wanted to tell us the truth. That I will read your rights to you again and that's what I want to do ok?
>
> [Martinez]: *Nods Yes.*
>
> .    .    .
>
> [Gutierrez]: We explained to you that you are arrested for Capital Murder. In other

words it's a Capital Murder, Ok?

[Martinez]: *Nods Yes*.

.    .    .

[Gutierrez]: It reads: Warnings that should be provided before the questioning: Number one -- You have the right to remain silent and not to provide any statement and that any statement that you make can be used against you in a trial.

[Martinez]: *Nods Yes.*

[Gutierrez]: Number Two -- Any statement that you make can be used as evidence against you in court.

[Martinez]: *Nods Yes.*

[Gutierrez]: Number Three -- You have the right to have an attorney present to advise you . . . to advise you before and during any questioning.

[Martinez]: *Nods Yes.*

[Gutierrez]: Number Four -- If you cannot hire an attorney, you have the right to have one appointed to you to advise you before or during any questioning.

[Martinez]: *Nods Yes.*

[Gutierrez]: Number Five -- You have the right to end this interview at any moment.

[Martinez]: *Nods Yes.*

[Gutierrez]: Number Six -- If you are not a US Citizen you have the right to contact your Consulate. In this case it's the Mexican Consulate.

[Martinez]: *Nods Yes.*

[Gutierrez]: Below it reads: I understand my rights and I hereby waive those rights, knowingly, intelligently and voluntarily.

[Martinez]: *Nods Yes.*

[Gutierrez]: Do you understand all the rights that I explained to you?

[Martinez]: *Nods Yes.*

[Gutierrez]:  Do you have a question regarding your rights?

[Martinez]:  No.  I just want to know if you can appoint an attorney to me because I don't have money . . .

[Gutierrez]:  That is one of the rights that you have . . . that if you don't have...one will be appointed to you.  That is what this right explains to you.[3]

[Martinez]:  *Nods Yes.*

[Gutierrez]:  That if you don't have money, the State assigns one to you free of charge.  At no cost to you.

[Martinez]:  *Nods Yes.*

[Gutierrez]:  So he can represent you.

[Martinez]:  *Nods Yes.*

[Gutierrez]:  Do you want to talk to that attorney right now?  Or do you want to talk to us about what happened?

[Martinez]:  No.  Well if you have an attorney. . . well, what I want . . . I know I will pay. . . but I want . . . well . . .

[Gutierrez]:  As I explained to you.  That is one of your rights.

[Martinez]:  Um-Hmm

[Gutierrez]:  What I want to know right now . . .

[Martinez]:  Um-Hmm

[Gutierrez]:  Like we explained to you when you told us what happened.

[Martinez]:  Um-Hmm

[Gutierrez]:  If you want an attorney right now there's no problem

[Martinez]:  Um-Hmm

---

[3]  Both of the translators use ellipses, which are normally used to indicate the omission of words from speech or writing, to show that the speaker paused during the conversation.  Rather than altering the translations, the opinion will set them forth as they are contained in the record.

[Gutierrez]: We'll assign one to you

[Martinez]: Um-Hmm

[Gutierrez]: We'll assign one to you before . . . we cannot talk to you . . .

[Martinez]: Ok.

[Gutierrez]: If you are . . . what I don't understand . . . I'm confused . . .

[Martinez]: Um-Hmm

[Gutierrez]: Don't you understand the right? That you have the right . . . that we are going to give you one free of charge?

[Martinez]: Um-Hmm

[Gutierrez]: Or would you like to talk to one? A moment ago you said no and I want to understand . . . I want to make sure you want to talk to us. Or do you want to talk to an attorney? That's what I don't understand. Do you understand me?

[Martinez]: *Nods Yes.*

[Gutierrez]: I'm confused.

[Martinez]: *Nods Yes.*

[Gutierrez]: A moment ago you told me that you do want to talk to us and now you say no. . .

[Martinez]: Later on can I talk to an attorney? Or not?

[Gutierrez]: Or you can talk to one right now

[Martinez]: Um-Hmm

[Gutierrez]: As you wish. But if you wish to talk to one right now, then we won't talk to you. Do you understand me?

[Martinez]: Um-Hmm

[Gutierrez]: That . . . That . . . if that's what you are asking for, we won't talk to you.

[Martinez]: *Nods Yes*

[Gutierrez]:  That's what I want you to understand.  Do you understand me?

[Martinez]:  *Nods Yes*

[Gutierrez]:  But yes, anytime.

[Martinez]:  *Nods Yes*

[Gutierrez]:  Right now, before, after, to better explain to you.  That's what this letter says.

[Martinez]:  Um-Hmm

[Gutierrez]:  You can talk to one at any moment, but it's your decision.

[Martinez]:  *Nods Yes*

[Gutierrez]:  If you wish to explain to us, as we told you, we are recording.

[Martinez]:  Um-Hmm

[Gutierrez]:  If you voluntarily. . .

[Martinez]:  *Nods Yes*

[Gutierrez]:  You want to tell us what happened, no problem.  But if you wish to talk to an attorney, then we do not . . . we do nothing.  Do you understand me?

[Martinez]:  *Nods Yes*

[Gutierrez]:  It's up to you.

[Martinez]:  *Nods Yes*

[Gutierrez]:  Now I ask you again.

[Martinez]:  Um-Hmm

[Gutierrez]:  Do you wish to voluntarily explain to us what happened

[Martinez]:  Um-Hmm

[Gutierrez]:  Or do you wish to talk to an attorney first.  Do you understand?  But as I said . . that is your decision only.

[Martinez]:  I will give my statement right now

[Gutierrez]:  Right now.

[Martinez]:  Ok.

[Gutierrez]:  Ok.  But you do understand your rights?

[Martinez]:  Yes.

[Gutierrez]:  You understand that you don't have to do it right now?

[Martinez]:  Um-Hmm

[Gutierrez]:  That you can talk to one before talking to us, you do understand that?

[Martinez]:  Yes, yes.

[Gutierrez]:  And you wish to voluntarily talk to us before talking to your attorney?

[Martinez]:  Voluntarily

[Gutierrez]:  Ok.

[Martinez]:  Voluntarily

[Gutierrez]:  Ok. Thank you.  I had to make sure . . .

[Martinez]:  Um-Hmm

[Gutierrez]:  . . . that you understood your rights

[Martinez]:  Yes.  Yes.

[Ruiz]:  I don't want you to say afterwards that I didn't understand

[Martinez]:  Yes.

[Ruiz]:  As he explained it.

[Martinez]:  *Nods Yes*

[Ruiz]:  So, you wish to talk to us?

[Martinez]:  Voluntarily.

The translation offered by the defense is substantially similar, although it does not reflect Martinez nodding his head affirmatively while Gutierrez spoke nor does it include him saying "Um-hmm" at various times.  The defense's translation differs on the critical portion of the conversation after Gutierrez read the *Miranda* warnings:

[Gutierrez]:  . . .You do understand all these rights that I have explained?  Do you have any question about the rights?

[Martinez]:  No.  Well, just to see if I can get an attorney.  Ah . . . what happens is that I do not have money for . . .

[Gutierrez]:  [interrupts]  This is one of the things you have . . . if you do not have one,  one is provided for you . . . that is what this right explains, that if you do not have money, the State gives you one free, without cost to you so that he can represent you.  Do you want to talk to that attorney right now, or do you want to talk to us about what happened?

[Martinez]:  Well, if you have an attorney available . . . it's that I want . . . I know that I am going to pay . . . I want . . . well that he [inaudible] me.

[Gutierrez]:   [interrupts]  That's why, as I explained to you, that's one of the rights . . .

[Martinez]:  aja . . .

[Gutierrez]:  what I want to know now . . .

[Martinez]:  aja . . .

[Gutierrez]:  . . . as I explained a while ago, that you explained what happened, if you want an attorney right now, there's no problem . . .

[Martinez]:  aja . . .

[Gutierrez]:  we'll give you one, we'll give you one before...we can't talk to yo (sic)...

[Martinez]:  Okay . . .

[Gutierrez]:   . . . if you are requesting...what I don't understand is . . . I'm confused . . . ah . . . don't you understand the right that you have the right . . . that you get a

free one for you or that you want to talk to one?  A while ago you told us that no and I want to understand, I want to be sre [sic] that yo [sic] want to talk to us or you want to talk with an attorney.  That's what I don't understand.  Do you understand me?  I'm confused.  A while ago you told me that you did want to talk to us, and now you don't.

[Martinez]:  Oh . . . later on I can talk to an attorney?

[Gutierrez]:  Or you can speak to one right now, whatever you want, but if you want to talk to one, then we won't talk to you.  Do you understand?  That . . . that . . . if you are asking for that, we won't talk to you.  That's what I want you to understand.  Do you understand me?  But yes, at any time, right now, before, after . . . to explain well, that's what this letter says.  At any time you can talk to one, but it's your decision.  If you want to right now, explain to us, as we told you, we are recording . . .

[Martinez]:  aja . . .

[Gutierrez]:  If you want to say what happened, voluntarily, there is no problem.  But if you want to talk to an attorney, then we don't do anything.  But it depends on you.  It depends on you.  Now, I am asking you again . . .

[Martinez]:  aja . . .

[Gutierrez]:  Do you want to explain to us what happened voluntarily?

[Martinez]:  aja . . .

[Gutierrez]:  . . . or do you first want to talk with an attorney, do you understand me?  But as I'm telling you . . . that's your decision totally . . .

[Martinez]:  My . . . my statement I will give it to you right now.

[Gutierrez]:  right now . . .

[Martinez]:  Okay.

[Gutierrez]:  Okay.  But you do understand your rights?

[Martinez]:  Yes . . . I understand . . .

[Gutierrez]:  You understand that you don't have to right now?

[Martinez]:  aja . . .

[Gutierrez]: That you can talk to one before talking to us, you do understand that?

[Martinez]: Yes, I do understand . . .

[Gutierrez]: And you want to talk to us voluntarily before talking with your attorney? Before . . .?

[Martinez]: voluntarily

[Gutierrez]: Okay. Thank you very much. Okay. I just wanted to ensure that you understand your rights.

[Detective Ruiz]: Yes, I don't want you to later say that I didn't understand the way he explained it. Okay. So, do you want to talk to us? Okay. That's fine.

[Martinez]: Voluntarily.

The detectives proceeded to interview Martinez and explained they had arrested him in connection with the capital murder of Jose Antonio Campa. Martinez admitted punching and kicking the victim during an argument and removing a wallet and some change from the victim's pockets after Martinez knocked him to the ground. Martinez also admitted that he drove his car over the victim as he left the scene.

At the suppression hearing, the trial judge initially did not want to consider either of the translations because she speaks Spanish and said she would decide for herself what Martinez stated. The judge indicated she would consider the translations later. Consequently, the DVD containing the video-recorded statement was admitted into evidence and played for the trial court. The State also offered the testimony of Detective Gutierrez. In Gutierrez's opinion, Martinez did not invoke his right to counsel but had asked a question about that right. At the conclusion of Gutierrez's testimony, the trial court asked that the contested portion of the DVD be replayed. The trial court again stated she did not want to consider the translations because she spoke Spanish. Afterwards, the parties and the trial court discussed, and at some points disagreed about, exactly what Martinez

had said in Spanish and which translation was correct. The State argued that the trial court was required to rely on the translations filed by the parties and could not replace them with her own translation. The prosecutor urged that if the trial court believed both translations were incorrect, the court should appoint another interpreter. The record does not reflect that the court appointed a translator to perform a third translation. At the conclusion of the hearing, the trial court took the matter under advisement. The court later signed a written order granting Martinez's motion to suppress. The State filed its notice of appeal. The trial court entered written findings of fact and conclusions of law setting forth the court's determination that Martinez had made a clear and unequivocal request for counsel.

### RIGHT TO COUNSEL

In a single issue, the State contends that Martinez did not make a clear and unequivocal request for counsel, and therefore, the trial court abused its discretion by suppressing the video-recorded statement. As part of this issue, the State challenges the evidentiary support for the trial court's factual findings that Martinez told Detective Gutierrez "he wanted a lawyer".

Unlike the Sixth Amendment right to counsel, which is offense-specific, the Fifth Amendment right to have an attorney present during police interrogation applies to any offense about which the police might wish to question a suspect. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex.Crim.App. 2009), *citing McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). The police must advise an arrested suspect that he has a right to have counsel present during any police-initiated interrogation. *Gobert*, 275 S.W.3d at 892, *citing Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Once the suspect has invoked his Fifth Amendment right to counsel, police interrogation must cease until counsel has been provided or the suspect himself reinitiates a dialogue. *Gobert*, 275 S.W.3d at 892, *citing Edwards v. Arizona*,

451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Not every mention of a lawyer will invoke the right to the presence of counsel during questioning. *Gobert*, 275 S.W.3d at 892; *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex.Crim.App. 1995)(noting that the mere mention of the word "attorney" or "lawyer" without more does not automatically invoke the right to counsel). A person in custody must unambiguously and unequivocally invoke his right to counsel before interrogation must cease. *Davis v. United States*, 512 U.S. 452, 458-61, 114 S.Ct. 2350, 2355-56, 129 L.Ed.2d 362 (1994). An ambiguous or equivocal statement regarding counsel does not require officers to halt the interrogation or even to seek clarification. *Davis*, 512 U.S. at 461-62, 114 S.Ct. at 2356; *Gobert*, 275 S.W.3d at 892. Whether the mention of a lawyer constitutes a clear invocation of the right to counsel will depend upon the statement itself and the totality of the surrounding circumstances. *Gobert*, 275 S.W.3d at 892, *citing Davis*, 512 U.S. at 459, 114 S.Ct. at 2350. The test is an objective one in that the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Gobert*, 275 S.W.3d at 892-93, *quoting Davis*, 512 U.S. at 458-59, 114 S.Ct. at 2350. We look to the totality of the circumstances to determine whether any statement referencing counsel was really a clear invocation of the Fifth Amendment right. *Gobert*, 275 S.W.3d at 893. We do *not* look to the totality of the circumstances, however, to determine in retrospect whether the suspect really *meant* it when he unequivocally invoked his right to counsel. *Id.*

We generally review a trial court's ruling admitting or excluding evidence for abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). Under this standard, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the

case.  *Ramos*, 245 S.W.3d at 418.

In the context of a motion to suppress evidence, we also utilize the bifurcated standard of review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997).  *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd).  As a general rule, the appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.  *Guzman*, 955 S.W.2d at 89.  Thus, we give almost total deference to the trial court's ruling on questions of historical fact and application of law to fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App. 2006), *citing Guzman*, 955 S.W.2d at 89. A trial court's rulings on mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses are reviewed *de novo*.  *Id*.

The issue before us is whether Martinez unequivocally invoked his Fifth Amendment right to have counsel present during the police interview.  No issue has been raised in the trial court or on appeal about the admissibility of either translation under Rule 1009 of the Texas Rules of Evidence.[4] *See* TEX.R.EVID. 1009.  Further, the trial judge did not indicate she disregarded either of the translations.  Therefore, we will consider both translations in deciding whether any of Martinez's statements constitute an unequivocal request to have counsel present during the interrogation. Whether any of the statements in either translation constitute an unequivocal invocation of the right to counsel is a mixed question of law and fact that does not turn on the credibility and demeanor of any witness.  Accordingly, we will review the issue *de novo*.

---

[4] During the suppression hearing, Martinez's counsel argued that the court should utilize the defense's translation because the State's translation had been compiled "in house" by an employee of the District Attorney's Office. Martinez did not object to the admissibility of the translation filed by the State.

*The Defense's Translation*

We will begin by considering the defense's translation of the conversation. After Gutierrez

read the Miranda card to Martinez and asked him whether he had understood his rights or had any

questions about them, Martinez replied:

> [Martinez]: No. *Well, just to see if I can get an attorney*. Ah . . . what happens is that I do not have money for . . . [Emphasis added].
>
> [Gutierrez]: [interrupts] This is one of the things you have . . . if you do not have one, one is provided for you . . . that is what this right explains, that if you do not have money, the State gives you one free, without cost to you so that he can represent you. Do you want to talk to that attorney right now, or do you want to talk to us about what happened?
>
> [Martinez]: *Well, if you have an attorney available* . . . it's that I want . . . I know that I am going to pay . . . I *want . . . well that he [inaudible] me.* [Emphasis added].
>
> [Gutierrez]: [interrupts] That's why, as I explained to you, that's one of the rights . . .

The State argues that Martinez's first statement is equivocal because he was merely

attempting to clarify his understanding of his right to counsel and was not affirmatively stating he

wished to consult with counsel prior to or during the interrogation. We agree with the State that the

first statement appears to be more in the nature of a question about the right to counsel. Martinez

did not articulate his desire to have counsel present sufficiently clearly that a reasonable police

officer in Gutierrez's circumstances would understand the statement to be a request for an attorney.

*See Davis*, 512 U.S. at 462, 114 S.Ct. at 2357 (holding that statement, "Maybe I should talk to a

lawyer" was not a request for counsel); *Gutierrez v. State*, 150 S.W.3d 827, 832 (Tex.App.--Houston

[14th Dist.] 2004, no pet.)(where defendant asked, "Can I have [my attorney] present now?" was an

ambiguous question about counsel); *Halbrook v. State*, 31 S.W.3d 301, 302 (Tex.App.--Fort Worth

2000, pet. ref'd)(determining that statement, "Do I get an opportunity to have my attorney present?"

did not constitute clear and unambiguous invocation of counsel); *Flores v. State*, 30 S.W.3d 29, 34 (Tex.App.--San Antonio 2000, pet. ref'd)(holding that question, "Will you allow me to speak to my attorney before?" was not clear and unequivocal invocation of right to counsel).

Following the first statement, Gutierrez explained the right to counsel in more detail and asked Martinez whether he wanted to talk to an attorney right then or whether he wanted to talk to the detectives about what happened. In direct response to that inquiry, Martinez said, "Well, if you have an attorney available . . . ." The State maintains that the second statement is also equivocal. We disagree. When the second statement is considered in light of Gutierrez's question, we conclude that Martinez was affirmatively and unequivocally stating his desire to consult with an attorney at that moment and the interrogation should have ceased. *See Smith v. Illinois*, 469 U.S. 91, 93, 96-97, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984)(holding that defendant unambiguously invoked his right to counsel by stating "Uh, yeah, I'd like to do that" in response to question whether defendant understood his right to counsel); *Jones v. State*, 742 S.W.2d 398, 405-06 (Tex.Crim.App. 1987)(defendant's statement to police, "I think I want a lawyer," was clear and unequivocal assertion of right to consult with counsel prior to any questioning). It is undisputed that Martinez did not initiate the continued discussion about the right to counsel. Therefore, Martinez's subsequent agreement to make a recorded statement does not undermine his prior invocation of the right to counsel. *See Smith v. Illinois*, 469 U.S. at 92, 105 S.Ct. at 491 (an accused's post-request responses to further interrogation may not be used to cast doubt on clarity of his initial request for counsel); *Gobert*, 275 S.W.3d at 895 (stating that once a suspect has clearly invoked his right to counsel, no subsequent exchange with the police, unless initiated by the suspect, can serve to undermine the clarity of the invocation). Having determined that Martinez invoked his right to counsel through review of the defense's translation, we need not review the State's translation of the recorded

statement.  We overrule the sole issue presented on appeal and affirm the order of the trial court granting the motion to suppress the recorded statement.


March 2, 2010

                                        _____

                                      ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)