# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00330-CR

**The State of Texas, Appellant**

**v.**

**Milton Dwayne Gobert, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D1DC06-904006, HONORABLE BOB PERKINS, JUDGE PRESIDING

## O P I N I O N

The State appeals the district court's order granting appellee Milton Dwayne Gobert's motion to suppress statements. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West 2006). At issue is the admissibility of Gobert's videotaped custodial interrogation by Austin police officers. The trial court determined that the officers conducting the interrogation failed to honor Gobert's invocation of the right to counsel. We agree with the court's conclusion and affirm the suppression order.

To effectuate the Fifth Amendment privilege against self-incrimination, a suspect has the right to consult with an attorney and to have counsel present during custodial interrogation, and the police must explain this right to the suspect before questioning begins. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). When a suspect asserts his right to counsel, all interrogation must cease until

counsel is provided or until the suspect personally reinitiates the conversation. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1980); *Dinkins v. State*, 894 S.W.2d 330, 350 (Tex. Crim. App. 1995). The suspect's request for counsel must be unambiguous, that is, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Davis v. United States*, 512 U.S. 452, 459 (1994). If the suspect makes an ambiguous or equivocal reference to an attorney that a reasonable officer in the circumstances would have understood only as possibly invoking the right to counsel, questioning need not cease. *Id*. Although it may be good police practice for interviewing officers to clarify a suspect's ambiguous statement regarding counsel, both to protect the rights of the suspect and to minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement, clarifying questions are not required, and the officers have no obligation to stop questioning. *Id*. at 461; *Dinkins*, 894 S.W.2d at 351-52.

The relevant facts are not in dispute. Gobert, who was suspected of committing the murder for which he now stands indicted, was arrested for a parole violation and for the assault of a woman named Christine or Christina. Following his arrest, Gobert was questioned by Austin detectives Burgh and Scanlon. Burgh began the interview by advising Gobert of his constitutional and statutory rights. *See Miranda*, 384 U.S. at 479; Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3 (West 2005). Asked if he understood his rights, Gobert replied that he did and then said, "I don't want to give up any right, though, if I don't got no lawyer." Scanlon immediately asked, "You don't want to talk?" The question was repeated by Burgh, "You don't want to talk to us?" Gobert answered, "I mean, I'll talk to y'all. I mean, I know, you know, what she had said about it, you

2

know. I'll speak with y'all, but (inaudible), man. I mean, I'll speak with y'all, you know." Scanlon then said, "Okay, signing this—signing this is not giving up your right. Signing this is acknowledging that this was read to you." He then added, "Okay? Your choice to talk to us is different. This—all this is, is acknowledging that you were warned."

Burgh then began to question Gobert regarding his relationship with Christina. After a number of questions were asked and answered, Scanlon interrupted to ask, "I want to clear something up, though, because earlier you said you don't want to give up your right to a lawyer. I want you—I want you—I want to clear up the fact that you want to talk to us about this. Okay? You understand what I'm saying?" Gobert answered, "Yeah." Scanlon continued, "I want to clear it up. I mean, that's—that's what you want to do, right?" Gobert again answered, "Yeah." The interrogation continued for several hours and ultimately resulted in appellant confessing to the murder of Mel Kernena Cotton.

At issue is Gobert's statement, "I don't want to give up any right, though, if I don't got no lawyer." The trial court concluded that this was an unequivocal invocation of the right to counsel during questioning. The court orally announced its findings and conclusions in the reporter's record:

> I just don't find anything that is unequivocal [sic] about the statement "I'm not going to waive any rights if I don't got no lawyer." I mean, I think that that's as unequivocal as I can imagine a statement being.
>
> I mean, if I were a defense lawyer and I was advising my client what to say, I can't imagine what advice I'd give him to say anything better than that. I mean, he's saying that he's not going to waive any rights until he has a lawyer. Under *Edwards*, once he makes that statement, he's got a right to a lawyer before anything else happens, you know.

3

I just—you know, and he was not provided a lawyer. They just—as soon as he says that, instead of saying, okay, you want a lawyer, we will get you a lawyer, or instead of—instead of asking him about the lawyer question, they just go totally around that and they start saying, well, you don't want to talk to us, which is not really what he had asked.

The right that he asked to invoke was his right to a lawyer, and he says at the same time he doesn't want to waive any rights until he's got one. I think the fact that they totally ignored what he said and kept on talking to him about does he want to make a statement, I think that that implies . . . they really don't believe in the warnings they have given him . . . .

. . . .

And that's what he's saying, is he doesn't want to give up any right. He doesn't want to give up his right to remain silent; he doesn't want to give up his right to have a lawyer appointed for him; he doesn't want to give up his right to terminate the interview. You know, that's what he says. I assume that that's what he means.

Now, the thing is, at that time what he says, "if I don't got no lawyer," maybe they might have some question at that point about whether he wanted a lawyer from that. I don't know how they could have that question.

But if they were going to ask any question, at that point, it seems to me, it was incumbent upon them to ask, okay, so you're saying you want a lawyer right now? Is that what you're saying? They want him to repeat his assertion that he wanted a lawyer, and then they could proceed along that line. But they don't ask that. They totally blow by the question of the lawyer deal.

. . . .

Well, either *Edwards* means what it says or it doesn't. Either you can invoke your right to a lawyer or you can't. I don't know what he can say to them that invokes his right to a lawyer any more than this. He says he doesn't want to waive any rights unless he's got a lawyer, and at that time, it seems to me, under *Edwards*, they have got to respect that right . . . . Under *Edwards*, it seems to me that once he says, I want a lawyer, that's it. I mean, that's the end of the ball game.

Because the issue is a mixed question of law and fact, we conduct a de novo review. *See Maestas v. State*, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

The State argues that Gobert's statement was not a clear assertion of the right to counsel. The State's position is summarized in this passage from its brief to the Court:

> [Gobert] never expressly asked for a lawyer. He never expressly stated he wanted an attorney there. The State maintains that [Gobert's] statement "I don't want to give up any right, though, if I don't got no lawyer," was not a clear, unequivocal, unambiguous invocation of the right to counsel. [Gobert] may have meant he did not want to waive his right to silence since there was no lawyer there. That is not a request for an attorney. Or [Gobert] may have meant he wanted to talk to a lawyer before he decided whether or not he would waive his right to remain silent. What exactly he meant is just not clear. His statement being subject to more than one interpretation, the State submits it did not constitute an unambiguous, unequivocal request for counsel, nor did it constitute an unambiguous, unequivocal assertion of his right to remain silent. When the detectives immediately asked [Gobert] for clarification, [Gobert] promptly and definitely indicated his willingness to talk to them.

The State's argument confuses the right to counsel with the right to remain silent. It may have been unclear, as the State argues, whether Gobert "did not want to waive his right to silence since there was no lawyer there" or whether Gobert "wanted to talk to a lawyer before he decided whether or not he would waive his right to remain silent." But Gobert did not contend and the trial court did not find that Gobert's right to remain silent was violated during the interrogation, and it is therefore irrelevant whether Gobert's statement to the officers was or was not a clear invocation of that right. Similarly, it is irrelevant that Gobert subsequently expressed a willingness to talk to the officers.

5

The right to consult with counsel before and during any interrogation is independent of the right to remain silent. Although Gobert did not expressly say that he wanted a lawyer present, he unambiguously, if ungrammatically, told the officers that he did not give up any right "if I don't got no lawyer." This was a clear statement that Gobert was unwilling to waive any of his rights under *Miranda* and article 38.22 without first consulting counsel. At least one of the officers, Scanlon, appeared to understand this when he said, "I want to clear something up, though, because earlier you said you don't want to give up your right to a lawyer." Gobert's willingness to speak to the officers was not inconsistent with or a waiver of his right to counsel. Gobert apparently believed that having invoked his right to an attorney, nothing he thereafter said to the officers could be used against him until counsel had been provided.[1] Under the holding in *Edwards*, this belief was justified in the circumstances shown here.

The opinions cited by the dissent are distinguishable on their facts. In *Davis v. United States*, the Supreme Court held that a suspect's statement, "Maybe I should talk to a lawyer," uttered over an hour and a half into a custodial interrogation and after the suspect had previously waived his *Miranda* rights was an ambiguous assertion of the right to counsel. 512 U.S. 452, 458-59 (1994). The suspect's question in *Robinson v. State*, "Do I need to talk to a lawyer before I sign?" was plainly ambiguous; it was neither an assertion of the right to counsel nor a request for counsel. 851 S.W.2d 216, 223-24 (Tex. Crim. App. 1991). In *Harper v. State*, after the suspect said "I don't even

---

[1] After Gobert had confessed to the killing and the interrogation was winding down, Burgh asked if Gobert would be willing to sign a written statement. Gobert became agitated and said, "I'm telling you that I done it, man. Why you have to type up a statement and all of that?" He later added, "Oh, man, I mean why we have to go back through all this, you know, this is just like what to present to the judge or something, to the D.A., make your job easier or something?"

want to talk unless I have me a lawyer," no further interrogation took place until after one of the officers asked, "Are you telling us you want to terminate this interview and speak to an attorney or do you want us to continue to discuss this matter?" and the suspect expressed his desire to continue without counsel. No. 03-00-00677-CR, 2001 Tex. App. LEXIS 7497, at *4-6 (Tex. App.—Austin Nov. 8, 2001, no pet.).

The dissent asserts that our holding in this case "blurs the boundaries" of the holding in *Davis* and "requires police officers to cease questioning when a statement is made that might possibly be a request for counsel." To the contrary, we acknowledge that a suspect must unambiguously request counsel and that an interrogation need not cease following an ambiguous or equivocal reference to an attorney. Far from blurring the boundaries of this rule, we uphold the venerable line drawn by long-standing precedent. To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. *Davis*, 512 U.S. at 458-59. Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). The Supreme Court in *Miranda* held that if a defendant indicates "in any manner" that he wishes an attorney before speaking or that he does not wish to be interrogated further, questioning must cease. 384 U.S. at 444-45. Although a suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," *Davis*, 512 U.S. at 459, he need not speak with the level of clarity or "discrimination of an Oxford don." *Id.* (Souter, J., concurring). Whether viewed as in invocation of his right to remain silent or to invoke

7

his right to counsel, we agree with the district court that appellant adequately communicated his desire to speak to an attorney before giving a statement that could be used against him. That the officers recognized this is clear from their retort "You don't want to talk to us?" and their return, after questioning, to clarify Gobert's intent.

We hold that Gobert's statement, made immediately after he was advised of his rights under *Miranda* and article 38.22, that "I don't want to give up any right, though, if I don't got no lawyer" was a clear invocation of the right to counsel. Under *Edwards*, all interrogation should have ceased until counsel was provided. Because the interrogation continued in violation of *Edwards*, Gobert's statements to the police are inadmissible against him on the trial of any criminal case. Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).

The district court's order granting Gobert's motion to suppress is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear;
      Dissenting Opinion by Justice Puryear

Affirmed

Filed: April 19, 2007

Publish