

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1095-10

**ALFREDO LEYVA PECINA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**PRICE, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

In summarizing the substantive Fifth and Sixth Amendment regime in place after the

United States Supreme Court's opinion in *Montejo v. Louisiana*,[1] the Court today says:

> Distilled to its essence, *Montejo* means that a defendant's invocation of
> his right to counsel at his Article 15.17 hearing says nothing about his possible
> invocation of his right to counsel during later police-initiated custodial
> interrogation. The magistration hearing is not an interrogation event. An

---

[1] 556 U.S. 778, 129 S.Ct. 2079 (2009).

uncharged suspect may invoke his Fifth Amendment right to counsel (and a defendant who has been arraigned may invoke his Sixth Amendment right to counsel) for purpose of custodial interrogation when the police or other law-enforcement agents approach him and give him his *Miranda* warnings. That is the time and place to either invoke or waive the right to counsel for purposes of police questioning.[2]

I gather that this conclusion stems from the observation, identified earlier in the Court's opinion as deriving from a footnote in *McNeil v. Wisconsin*, that the Supreme Court has "in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation[.]'"[3] Ultimately the Court concludes that "Judge Maddock's magistration did not trigger any Fifth Amendment right concerning custodial interrogation; that was done by the detectives at the beginning of their interrogation."[4] I agree that, ordinarily, it is probably accurate to say that, even though it includes the issuance of *Miranda* warnings, a "magistration hearing is not an interrogation event." But nothing in either *Montejo* or *McNeil* compels us invariably to regard these—a "magistration hearing" versus an "interrogation"—as mutually exclusive events for Fifth Amendment purposes. And it strikes me as unwise to hold as a categorical matter that a magistration hearing under Article 15.17 can *never* constitute any part of an "interrogation event." To my mind, the facts of this case amply illustrate why.

---

[2] Majority opinion, at 15-16.

[3] *Id*. at 11 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991).

[4] *Id*. at 19.

This is not a case that turns on the credibility of the witnesses at the suppression hearing or the reliability of their testimony, neither of which is disputed. Two Arlington police detectives picked up Judge Maddock from the municipal courthouse and took her with them to the appellant's hospital room, where he was already under the guard of a Dallas County deputy sheriff. Pointing to the detectives, Judge Maddock told the appellant, "They are here. They would like to speak to you." Judge Maddock remembered that the appellant either nodded or said "yes," thus "acknowledg[ing]" her statement as to why the detectives were present.[5] The detectives then stepped out of the room for "probably fifteen or twenty minutes" while Judge Maddock administered the Article 15.17 warnings, in Spanish, informing the appellant of what he was charged with and then issuing all of the admonishments that are enumerated in footnote four of the Court's opinion today.[6] These warnings explicitly and exclusively refer to the appellant's right to counsel, whether retained or appointed, "during any interview and questioning by peace officers or attorneys representing [the] [S]tate[.]" They nowhere refer, even implicitly, to the appellant's right to representation at any *other* time or for any *other* purpose. At the conclusion of this process, Judge Maddock asked the appellant whether he wanted "a court appointed attorney. And he

---

[5] Later in her testimony, Judge Maddock would clarify that the appellant "never said to me that he wanted to talk to" the detectives. I take this to mean that she did not construe his initial acknowledgment that the detectives would like to "speak" to him as an indication that he was willing to do so.

[6] Majority opinion, at 4 n.4.

stated he did."

Judge Maddock testified that she took this to mean that the appellant wanted her to appoint an attorney to represent him "for court[,]" for "these proceedings." She did not elaborate, and it is unclear to me why she would think so, since the warnings she had just administered to the appellant made no allusion whatsoever to the right to an attorney for trial. She told the waiting detectives that the appellant "had initially asked for a lawyer," but that he had then told her "that he wanted to talk to" the detectives. From their respective testimonies, one gets the distinct impression (or at least I do) that the detectives understood Maddock to mean that the appellant had first indicated that he wanted counsel appointed for purposes of the police interrogation, but that he had subsequently relented. In any event, it does not matter what either Judge Maddock or the detectives believed since, as the Court correctly acknowledges today, the standard is an objective one[7]—a suspect must articulate that his desire is for counsel *for purposes of custodial interrogation*, and he must do so with sufficient clarity that a reasonable officer under the circumstances would understand it to be just that.[8] I agree with the court of appeals that the objective circumstances in this case can only reasonably be construed to indicate that the appellant's initial, clearly expressed desire

---

[7]

Majority opinion, at 16-17.

[8]

*State v. Gobert*, 275 S.W.3d 888, 892-93 (Tex. Crim. App. 2009).

was to have the assistance of counsel *for purposes of custodial interrogation*.[9]

Of course, it is also undisputed that what I take from the circumstances to be a clear invocation of the right to interrogation counsel—not trial counsel—occurred in front of the magistrate alone, out of the immediate presence of the interrogating officers themselves. Although I am not entirely certain, I think what the Court is saying today is that this makes all the difference because what happened in the hospital room in the absence of the detectives was merely a "magistration" and not an "interrogation event."   But even the Court seems to concede that an "interrogation event" may be initiated either by law-enforcement or some

---

[9]

The court of appeals majority's view is well expressed and bears repeating:

> We . . . disagree with the dissent's assertion that whatever occurred at the article 15.17 hearing did not implicate *Edwards* [*v. Arizona*, 451 U.S. 477 (1981)] because Pecina had somehow "not yet been approached for interrogation." Dissenting op. at 272.  The record belies any such interpretation.  The detectives did not just happen to show up at Pecina's hospital room.  They went to the hospital to arrest Pecina and to interrogate him and brought with them the magistrate to administer his *Miranda* warnings; they walked into his room with the magistrate; the magistrate explained to Pecina that the detectives wanted to talk to him; and they waited in the hall while she administered the warnings.  After he had invoked his right to counsel, they proceeded to re-enter the room and conduct their interrogation after reading Pecina his *Miranda* rights a second and third time.

> * * *

> Nor did Pecina invoke his Fifth Amendment right to counsel "anticipatorily," as the dissent asserts, using a term referenced in dictum by the majority opinion in *Montejo*. . . .  Pecina asked for appointed counsel in response to being advised that he was entitled to counsel during any questioning and while the police waited to do just that.  His request was precisely for the sort of assistance of counsel that is the subject of *Miranda*.

*Pecina v. State*, 326 S.W.3d 249, 267 & n.101 (Tex. App.—Fort Worth 2010).

"other state agent[ ]."[10]  Any reasonably objective viewer would conclude from the peculiar facts of this case that Judge Maddock was acting as a de facto agent of the interrogating detectives.  She arrived with them at the hospital room, where the appellant was already under the guard of law enforcement.  The first thing she told him was that the detectives wanted to "speak" to him.  She then pointedly and exclusively informed him of his Fifth Amendment right to counsel for purposes of custodial interrogation, and, after he invoked it, nevertheless asked him whether he "still" wanted to talk to the detectives—though she would later acknowledge that he had *not* told her, up to that point, that he *did* want to talk to them.  In other words, by all objective indicators, Judge Maddock was doing her utmost to facilitate the appellant's immediate subjugation to custodial interrogation.

"Most rights[,]" Justice Scalia observed in his footnote in *McNeil*, "must be asserted when the government seeks to take the action [those rights] protect against."[11]  Like the court of appeals, I believe that this is exactly what the appellant did in this case.[12]  To avoid the consequences of that assertion by categorizing Judge Maddock's conduct as nothing more than a "magistration," which, by the Court's definition, can never form any part of an "interrogation event," amounts to the proverbial exaltation of form over substance—it

---

[10]  Majority opinion, at 11.

[11]  *McNeil*, *supra*, at 182 n.3.

[12]  *See* note 9, *ante*.

willfully ignores the objective reality of the situation as accurately perceived by the court of appeals. I understand that it is sometimes difficult to stomach the consequences of a doubly prophylactic rule such as *Edwards* under circumstances, like those presented by this case, in which a suspect appears later to freely and voluntarily relinquish the Fifth Amendment right to counsel that he had earlier invoked. But, just as it is never our prerogative to ignore Supreme Court precedent, neither should we conjure new strategies, as the Court appears to do today, that carve out artificial legal distinctions in order to avoid those unpalatable consequences. The appellant clearly invoked his right to counsel for custodial interrogation in the context of what was unmistakably an "interrogation event." That the invocation also occurred during a simultaneous "magistration," while accurate, does not detract from its essential character for Fifth Amendment purposes. And once a suspect has made it clear that he desires the assistance of counsel in coping with police interrogation, we are not entitled to look at his subsequent responses to official entreaties "to determine in retrospect whether the suspect really *meant* it when he unequivocally invoked the right to counsel."[13]

I agree with the court of appeals's conclusion that the appellant's Fifth Amendment right to interrogation counsel was violated, and I would therefore affirm its judgment. Because the Court does not, I respectfully dissent.

FILED:      January 25, 2012
PUBLISH

---

[13]    *Gobert, supra*, at 893.