**Opinion filed June 13, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00173-CR

_____

### ERNESTO LUCIO NATIVIDAD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR47674**

### M E M O R A N D U M   O P I N I O N

The jury found Ernesto Lucio Natividad guilty of the offense of murder and assessed his punishment at confinement for twenty years. The trial court sentenced him accordingly. We affirm.

There is no challenge to the sufficiency of the evidence. Appellant and Walter Galicia were both employed to tend to horses at the Midland Polo Club. On the date of the murder, Appellant, Galicia, and other workers at the Midland Polo Club, after they had closed out the day's work, gathered in one of the barns at the Midland Polo

Club to drink beer. The record reflects that Appellant and Galicia argued. Appellant left but soon returned. When Appellant returned, he had a gun with him. Appellant shot Galicia twice, and Galicia later died from the gunshot wounds.

Although discussed as four separate "Point[s] of Error," Appellant basically presents two issues on appeal. In three of his points of error, Appellant maintains that he is entitled to a reversal because the State made improper jury arguments. Appellant did not object to any of the arguments or statements about which he now complains. Although there are valid reasons as to why counsel might withhold objections in any given case, because Appellant chose not to object in the trial court, he has waived the complaints and presents nothing for review. TEX. R. APP. P. 33.1(a); *Valencia v. State*, 946 S.W.2d 81, 82–83 (Tex. Crim. App. 1997); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). We overrule Appellant's first, second, and fourth points of error.

In his third point of error, Appellant contends that the trial court erred when it overruled his objection to the admissibility of an oral statement that he gave to law enforcement personnel. Appellant's objection was based upon a claim that he did not waive his right to counsel.

During the evening hours after the murder, City of Midland Police Department Detectives Anthony Corson and Rosie Rodriguez detained and interviewed Appellant. Appellant's recorded statement covered a span of about five hours. The State sought to introduce, as State's Exhibit No. 24, only the initial twelve minutes or so of that interview. We are asked to determine when, during the interview, Appellant unequivocally invoked his right to counsel.

At the beginning of the interview, Detective Corson told Appellant that he was not under arrest but that he was being detained and was not free to leave. Appellant asked Detective Corson whether he needed a lawyer. Detective Corson told Appellant, "That's totally up to you."

2

After that exchange, Detective Corson told Appellant that he was going to advise Appellant of his rights. At that point, Appellant asked whether he was under arrest. Detective Corson again told Appellant that he was detained, not under arrest; that he was not being charged with an offense "at this time"; but that he was not free to leave.

Detective Corson informed Appellant, among other things, of his right to counsel and asked Appellant whether he understood. Appellant replied, "I think so." Detective Corson again asked Appellant whether he understood "the rights that I just went over." Whereupon Appellant responded, "What did I do?" Detective Corson told Appellant that something had happened and that he wanted to talk to Appellant about it but that he wanted to be sure that Appellant understood his rights. Detective Corson asked Appellant, "Does that make sense?" Appellant replied, "Uh-huh, that part makes sense." Again, Detective Corson asked Appellant whether he understood his rights. Appellant said, "Um, yes."

At that point in the interview, Detective Corson asked Appellant if he "wish[ed] to waive those rights and speak to me at this time?" Appellant answered, "Not really. If I don't have the freedom to leave, I want to keep as many rights as I can." Detective Corson, in response to Appellant's statement, said, "Okay. So, you don't wish to provide a statement to me. Did I understand that correctly?"

Before Appellant answered, Detective Rodriguez interjected, "Do you want to talk to us and give us your side of what happened?" To Detective Rodriguez's question, Appellant stated, "I want to know if I'm in trouble because I was on my way home after I'd had a few beers and I'm afraid that I may have hit somebody or something on my way home." Detective Corson assured Appellant that he was not investigating a wreck. Appellant commented, "Okay," and then told the detectives that the last thing that he remembered was having a few beers and that, when the

3

storm "was fixing to kick in," he said, "Hey, you guys, I'm going to go home" and then left.

Yet again, Detective Corson asked Appellant whether he wished to waive his rights and discuss "this" with him. Detective Corson asked Appellant whether he was willing to answer questions. Detective Corson also reminded Appellant that Appellant could stop the interview at any time and could request a lawyer at any time. At that time, Detective Corson asked, "Do you mind if I ask you a few questions?" Appellant told Detective Corson, "If I don't need a lawyer, I don't mind." Detective Corson again told him that he could not tell him whether he needed a lawyer. Nevertheless, Appellant again asked whether he should get a lawyer. Once again, Detective Corson told Appellant that the choice was his and added that, if he answered questions, it would have to be of his own free will and not because he had been tricked or pressured. After Detective Corson said that to Appellant, he asked Appellant whether it would be okay to ask Appellant "a couple of questions." Appellant responded, "Yes."

After Appellant said, "Yes," Detective Corson began to ask general background questions, such as Appellant's name, date of birth, where he lived, where he worked, what his duties were at work, what he had done that day, and other things of that nature. Detective Corson also asked Appellant to draw a picture of the layout of the area where he worked at the Midland Polo Club. Just as Detective Corson was about to hand a sheet of paper for Appellant to use to draw the map, State's Exhibit No. 24 ends.

Although not reflected in State's Exhibit No. 24, it is at this point that Appellant told the detectives, "I really think I need a lawyer." The trial court viewed State's Exhibit No. 24 as well as the next portion of the interview, which contained Appellant's statement, "I really think I need a lawyer." The trial court ruled that, up until that point, Appellant had not unequivocally invoked his right to counsel.

4

However, the trial court also ruled that, when Appellant said, "I really think I need a lawyer," he, at that point, effectively invoked his right to counsel and that neither the invocation of counsel nor any of the interview after that was admissible.[1]

There is no dispute that, at some point during the interview, Appellant unequivocally invoked his right to counsel. The dispute centers around this question: When did that occur?

According to the State, Appellant, for the first time, unequivocally asserted his right to counsel when he said, "I really think I need a lawyer." Appellant, on the other hand, appears to take the position that, because he never waived his right to counsel, none of the statement was admissible. We take that to be Appellant's position because, in his brief to this court, Appellant uses language such as this: "During testimony, police reviewed a recorded statement defendant/appellant had given." Appellant refers to "such statement," "such testimony," and "more such testimony." Appellant also makes the argument that "his statement should have been suppressed." Appellant does not otherwise direct us to any specific part of Appellant's statement that he finds objectionable.

Appellant cites to Article 38.22 of the Texas Code of Criminal Procedure to support his argument that, because he did not unequivocally waive his right to counsel, his oral statement was inadmissible. The State counters that the abbreviated recording of the statement, State's Exhibit No. 24, was made before Appellant unequivocally asserted his right to counsel. The State also takes the position that some of Appellant's statements were not the result of questioning or that the statements were related to Appellant's right to counsel and are, therefore, admissible.

---

[1]In his brief, Appellant also makes mention that the statements made by him to the police "should have been suppressed in accordance with the Motion to Suppress filed." There was no hearing on the motion; it was carried over to the trial.

Article 38.22, Section 3(a) of the Texas Code of Criminal Procedure provides, in relevant part:

> No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
>
> (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement; [and]
>
> (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 [of this article] and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1)–(2) (West 2018).

One of the warnings that an interrogator must give to an accused is a warning that the accused has the right to have a lawyer present to advise him prior to and during any questioning. *Id.* art. 38.22, § 2(a)(3). Again, Appellant asserts that he never waived his right to counsel and, to the contrary, that he asserted that right.

The right to counsel is invoked when a suspect indicates that he wants to talk to an attorney or to have an attorney present during questioning. *Edwards v. Arizona*, 451 U.S. 477 (1981); *Miranda v. Arizona*, 384 U.S. 436 (1966); *Ochoa v. State*, 573 S.W.2d 796 (Tex. Crim. App. 1978). However, if a suspect makes an ambiguous or equivocal statement with respect to his desire for an attorney, interrogating officers are not required to stop the interview. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). The use of the word "attorney" or "lawyer" does not, in and of itself, invoke the right to counsel. *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). The issue as to whether a suspect has clearly and effectively invoked his right to counsel is determined by a consideration of the statement itself and the totality of the circumstances that surround the interrogation. *Gobert*, 275 S.W.3d at

6

892; *Dinkins*, 894 S.W.2d at 351. The test is an objective one, and a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. U.S.*, 512 U.S. 452, 458–59 (1994).

The purpose behind the prohibition against questioning a suspect after he has invoked his right to counsel is to protect an accused from being "badgered" into incriminating himself by continued questioning from law enforcement. *Dinkins*, 894 S.W.2d at 351. After Appellant told Detective Corson, "Not really. If I don't have the freedom to leave, I want to keep as many rights as I can," Detective Corson continued to talk to Appellant, but he confined his questions and statements to those that pertained solely to the right-to-counsel issue. We have reviewed State's Exhibit No. 24 and have found nothing that would reflect that the detectives "badgered" Appellant into anything. To the contrary, Detective Corson appears to be very patient and persistent, and he went to great lengths in his efforts to explain Appellant's right to counsel.

We review evidentiary rulings for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will not reverse the decision of the trial court unless it is one that falls outside the zone of reasonable disagreement. *Id.*

We do not believe that the trial court abused its discretion when it admitted the complained-of statements. Detective Corson repeatedly advised Appellant of his right to an attorney and told Appellant that it was his own decision as to whether he wanted an attorney. Each time that Appellant had questions, Detective Corson answered them and further explained or repeated Appellant's right to counsel.

As we have set out above, at one point when asked whether he wanted to talk to the detectives, Appellant responded, "Not really. If I don't have the freedom to leave, I want to keep as many rights as I can." Furthermore, Appellant continued to

7

talk with the detectives.  The State points out the importance of that circumstance as it was explained by the court in *Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010).  There, the defendant told his interrogators, "I should have a lawyer," but, as in the case before us, the defendant continued to talk with them.  *Id.* at 341.  In *Davis*, the fact that the defendant continued to talk to the detectives was an indication that the defendant's use of the word "should" was not an unequivocal invocation of his right to counsel.  Further, the court noted that the statement was not in the form of a request for counsel nor was it an express statement that the defendant wanted a lawyer.  *Id.*  Appellant's statement here, "Not really.  If I don't have the freedom to leave, I want to keep as many rights as I can," was not in the form of a request for counsel and neither was it an express statement that he wanted a lawyer.  Further, the fact that Appellant continued to talk with the detectives is indicative of the fact that he had not yet unequivocally asserted his right to counsel.

After Detective Corson again, and for the last time in the initial portion of the interview, discussed Appellant's right to counsel with him, Detective Corson asked Appellant whether it would be okay to ask him "a couple of questions."  (SX24 @ 23:31:13). Appellant responded, "Yes."

As we have noted, a short time later, but not included in the portion of the interview that was admitted at trial, Appellant told the detectives, "I really think I need a lawyer."  The trial court held that to be the point in time when Appellant first unequivocally invoked his right to counsel.  The State does not contest that ruling.  At that time, the detectives had explained Appellant's right to counsel to him many times and had answered Appellant's many questions.  Appellant, although not subjected to pressure from the detectives, continued to interact with them.  A reasonable police officer, under all the circumstances that surrounded the interview, could understand Appellant's last statement to be his first unequivocal request for an attorney.  *See Davis*, 512 U.S. at 458–59.

8

Under this record, based upon the totality of the circumstances, we cannot say that the trial court abused its discretion when it admitted the evidence reflected in States Exhibit No. 24. We overrule Appellant's third point of error on appeal.

Because we have so held, we need not address the State's argument that much of the complained-of evidence was either not in response to custodial interrogation or that it concerned Appellant's understanding of his rights. A custodial interrogation takes place when a defendant is in custody and is exposed "to any words or actions on the part of the police . . . that [the police] should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980); *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990). Words or actions by law enforcement that normally attend an arrest and custody, such as when law enforcement informs a suspect of his *Miranda[2]* rights, do not constitute a custodial interrogation. *See Innis*, 446 U.S. at 300; *Jones*, 795 S.W.2d at 176.

We affirm the judgment of the trial court.

JIM R. WRIGHT
SENIOR CHIEF JUSTICE

June 13, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.