# NO. 12-18-00019-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RICARDO MARTINEZ PINEDA,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Ricardo Martinez Pineda appeals from his conviction for aggravated assault against a public servant. In two issues, Appellant contends the trial court committed reversible error in admitting his statement made to three officers while in custody. We affirm.

## BACKGROUND

Appellant was under surveillance for dealing in narcotics. On March 21, 2016, Deputy Corey Cameron, one of the deputies conducting the surveillance, decided to stop Appellant's vehicle for a traffic violation. Instead of stopping, Appellant and his confederates led Deputy Cameron on a high speed chase. During the pursuit, the person in the passenger seat of the fleeing car fired several shots at Deputy Cameron. The officers identified Appellant as the person in the passenger's seat. A co-defendant who was in the fleeing vehicle stated that Appellant was the person firing at the pursuing patrol car. Appellant escaped that day but was ultimately captured on April 4, 2016, in Arkansas. On April 12, Special Agent Darby Hodges, Detective Eric Whitaker, and Constable Jeff McClenny drove to Jonesboro, Arkansas, picked up Appellant, and began driving back to Tyler.

At the trip's outset, Appellant and the three officers engaged in small talk about the bad food in the Jonesboro jail and other topics. But according to the officers, they did not question

him about the charged offense. During the conversation, Appellant volunteered to "give you everybody . . . all my co-conspirators, my defendants." One of the officers interrupted Appellant by saying, "talking works for you . . . [b ]ut you know if you want any of that stuff to count for you . . . and you really want to tell us about, we're going to have to read you your rights." The officer gave Appellant the *Miranda* warnings. Throughout the rest of the trip, Appellant answered most of the officers' questions, and admitted to numerous crimes and bad acts, many of which were used against him during the punishment phase of his trial. However, Appellant consistently refused to discuss the March 21 chase and shooting until his lawyer was present.

A jury subsequently found Appellant "guilty" of aggravated assault against a public servant and assessed his punishment at confinement for life and a $10,000 fine. After the verdict, the trial court found that the officer properly warned Appellant before questioning began, that his statements to the officers were voluntary, and that he never unequivocally invoked his right to counsel.

### ADMISSION OF APPELLANT'S STATEMENT

In his first issue, Appellant complains that the trial court erred in admitting his statement made to the officers during custodial interrogation.

### Standard of Review

Generally, a trial court's ruling on the admission of evidence is reviewed for an abuse of discretion. *See **Montgomery v. State***, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990). More specifically, a trial court's ruling on what is essentially a suppression issue under Article 38.22 of the code of criminal procedure is reviewed under a bifurcated standard of review. *See **McCulley v. State***, 352 S.W.3d 107, 117 (Tex. App.—Fort Worth 2011, pet. ref'd) (citing ***Amador v. State***, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)). A trial court's ruling on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor is given "almost total deference." ***Id***. (citing ***Amador***, 221 S.W.3d at 673; ***Estrada v. State***, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); ***Johnson v. State***, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002)). However, a court's rulings on application-of-law-to-fact questions that do not turn on credibility and demeanor are reviewed *de novo*. ***Id***.

2

**Applicable Law**

Both the United States Supreme Court precedent and Article 38.22 set out the standards by which the admissibility of a defendant's recorded statement is governed. Article 38.22 mandates that no "oral . . . statement of an accused made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding unless" the statement is recorded and "prior to the statement but during the recording the accused is given the [required] warning . . . and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning. . . ." TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a)(1), (2); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *see also Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Under these standards, it is required that, prior to making a statement, an accused be told:

1) He has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
2) Any statement he makes may be used as evidence against him in court;
3) He has the right to have a lawyer present to advise him prior to and during any questioning;
4) If he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him . . .; [and]
5) He has the right to terminate the interview at any time. . ..

TEX. CODE CRIM. PROC. ANN. § 38.22 2(a)(1)-(5). The giving of this warning, "or its fully effective equivalent," is mandatory. *Id*. art. 38.22 § 3(e)(2). In fact, any statement made without these warnings is presumed to have been involuntarily made and is, therefore, inadmissible at trial. *See Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630; *see also Carter v. State*, 309 S.W.3d 31, 35-36 (Tex. Crim. App. 2010) (citing *Miranda*, 384 U.S. at 467, 86t S. Ct. 1624).

Officers cannot use "question first, warn later" strategy to undermine the effectiveness of the *Miranda* warnings "by waiting for a particularly opportune time to give them, after the suspect has already confessed." *Missouri v. Seibert*, 542 U.S. 600, 611, 124 S. Ct. 2601, 2610, 159 L. Ed. 2d 643 (2004). When warnings are withheld "until after interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content." *Id*., 542 U.S. at 613, 124 S. Ct. at 2610.

> Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again. A more likely reaction

3

on a suspect's part would be perplexity about the reason for discussing rights at that point, bewilderment being an unpromising frame of mind for knowledgeable decision.

*Id.*, 542 U.S. at 613, 124 S. Ct. at 2611. When a "deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made." *Id.*, 542 U.S. at 622, 124 S. Ct. at 2616 (Kennedy, J., concurring). Curative measures should be sufficient to ensure that a reasonable person in the suspect's situation understood the protections recited in the *Miranda* warnings and the consequences of abandoning them. *Id*.

Examples of appropriate curative measures include: (1) a substantial break in time and circumstances between the unwarned statement and the *Miranda* warning; (2) explaining to the defendant that the unwarned statements, taken while in custody, are likely inadmissible; (3) informing the suspect that, although he previously gave incriminating information, he is not obligated to repeat it; (4) the interrogating officers refrain from referring to the unwarned statement unless the defendant refers to it first; or (5) if the defendant does refer to the pre-*Miranda* statement, the interrogating officer states that the defendant is not obligated to discuss the content of the first statement. *Martinez v. State*, 272 S.W.3d 615, 626-27 (Tex. Crim. App. 2008).

A suspect who invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present. *Davis v. U.S*., 512 U.S. 452, 458, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362 (1994). However, the suspect must unequivocally request counsel. He must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Id*., 512 U.S. at 459, 114 S. Ct. at 2355. "An ambiguous or equivocal statement with respect to counsel does not even require officers to seek clarification, much less halt their interrogation." *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). "[W]hen a suspect makes a clear, but limited, invocation of the right to counsel, the police must honor the limits that are thereby placed upon the interrogation, but they may question their suspect outside the presence of counsel to the extent that his clearly expressed limitations permit." *Id.* at 893.

**Discussion**

Appellant argues that the officers failed to give *Miranda* warnings at the beginning of their trip back to Texas, because they intended to engage in a "question now, warn later" strategy. He contends that before administering *Miranda* warnings, the officer told him, "Hey, you've already

4

told us this stuff, now we know it, if you want any benefit from what you've already given us you need to tell us that stuff again." From this Appellant infers that the officers were asking him to repeat self-incriminating statements he already told them and that the subsequent *Miranda* warnings were given after his self-incriminating statement made earlier in the trip. He contends that his recorded statement was therefore the product of an intentional "question now, warn later" strategy. He argues that since no effective curative measures intervened between the prewarning statements and the postwarning statements, the *Miranda* warnings given were ineffective and his recorded statement was inadmissible.

The difficulty with Appellant's argument is that the quotation from which he constructs his argument does not appear in the record. The record shows that the officer prefaced the *Miranda* warnings by saying, "Hey – and you know that talking works for you. I mean you know about that stuff . . . But you know if you want any of that stuff to count for you and you want to really tell us about it, we're going to have to read you your rights." When Appellant volunteered to "give you everybody . . . all my co-conspirators, my defendant," according to Special Agent Hodges, the tape recording began and Appellant received the appropriate warnings. Both Hodges and Whitaker testified they did not talk with Appellant "about anything having to do with drugs or people who were drug dealers or anything like that" before the warnings.

During the recorded statement, Appellant's remarks indicate that he did not understand "talking works for you" to be a promise of leniency in exchange for talking. The officers throughout the conversation reiterated that they could not promise him anything.

> Officer: I can't promise you _ _ _ _ as far as time.
> Appellant: I don't want you to promise me anything.
> Officer: It's all up to the judge, man.

Later the interrogating officer reiterated, "I can't make any promises." Appellant replied, "I'm not telling you to make any promises." During the tape recording, Appellant said "you can lock me up for life. I don't give a ____."

The record shows Appellant was sober, that he was not threatened, nor denied bathroom breaks, food or sleep. It also shows that he was properly warned before questioning began. The recorded statement was not the product of a "question now, warn later" strategy.

Appellant also maintains that the record reflects he unequivocally invoked his right to counsel during the interrogation. Therefore, he claims the record does not support the trial court's finding that he "never asked to stop talking to officers or unequivocally invoked his right to counsel."

The transcript of Appellant's conversation with the officer shows that when the subject of the shooting came up, Appellant said, "I think we're going to wait for those questions later." When the officers revisited the topic near the end of the trip, Appellant said, "[P]lease let me talk to my lawyer about that one." Appellant insists this "is as unequivocal and clear an invocation of the right to counsel as one can make." But read in context, it is no more than a reiteration of his earlier expressed reluctance to discuss the facts surrounding the chase and shooting until later. It is, at most, a limited invocation of his right to counsel based upon his desire that the interrogation be limited to exclude that subject until later. After expressing his reluctance to talk about the shooting until later, he immediately resumed the conversation about other crimes and confederates for the remainder of the trip.

The evidence supports the trial judge's finding that Appellant never unequivocally invoked his right to counsel. Appellant's statement was voluntary, and the trial court did not err in admitting it. Appellant's first issue is overruled.

Our disposition of Appellant's first issue makes it unnecessary for us to address his second issue claiming harm. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

The judgment is ***affirmed***.

BILL BASS
Justice

Opinion delivered July 10, 2019.
*Panel consisted of Worthen, C.J., Neeley, J., Bass, Retired Justice, Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 10, 2019**

**NO. 12-18-00019-CR**

**RICARDO MARTINEZ PINEDA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 241-0879-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Worthen, C.J., Neeley, J. and Bass, J., Retired Justice,*
*Twelfth Court of Appeals, sitting by assignment.*