**Affirmed and Memorandum Opinion filed July 26, 2016.**



In The

# Fourteenth Court of Appeals

---

NOS. 14-15-00398-CR
14-15-00399-CR
14-15-00400-CR

---

**SANDRA F. BERRY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause Nos. 1462610, 1462961, 1462962**

---

## M E M O R A N D U M   O P I N I O N

In two issues, appellant Sandra Berry appeals her convictions for murder, arson, and tampering with evidence, complaining: (1) the evidence presented at trial was legally insufficient to establish her guilt of each of the offenses, and (2) the trial court erred in admitting a portion of a video wherein appellant invoked her right to counsel. We affirm.

# I. Background

On April 28, 2014, the Houston Fire Department responded to a report of a burning vehicle in a vacant field located in Harris County, Texas. After extinguishing the fire, firefighters found Houston Edwards' body in the SUV. He was found face-down in the back seat under an air mattress with a gunshot wound to the head. His body was significantly burned. A medical examiner at the Harris County Institute of Forensic Sciences determined that Edwards was killed by a close-range gunshot wound to the head. The medical examiner also determined that, although Edwards' body sustained extensive burn damage, all of his burns occurred post mortem. Several containers of ignitable liquids were found at the scene, and investigators determined that the SUV was set aflame using an ignitable liquid. Investigators also found pools of Edwards' blood near the field entrance and inside the vehicle, which caused investigators to conclude that Edwards was killed somewhere else and transported to the location where his body was found.

Investigators additionally reviewed security videos from several nearby businesses. The videos revealed a black Lexus sedan driving with the SUV towards the crime scene. Officers observed that, at the time the SUV was set on fire, the Lexus circled the block with its headlights off. The video later showed a figure running from the blaze to the Lexus. Based on the surveillance videos, officers concluded that two people were involved.

Edwards and appellant lived together and held themselves out as common-law husband and wife. Two months prior to his death, Edwards purchased a life insurance policy, naming appellant as the beneficiary. Witnesses testified that appellant began making inquiries about the policy shortly after Edwards' dead body was discovered. Also, witnesses testified that before Edwards' death, appellant said she was tired of his "messing with her son"; that, if she killed him,

no one would know; and that she attempted to acquire a gun.

After learning appellant had possession of the keys for a black Lexus owned by Edwards and similar to the one depicted in the video footage, a Houston Police Department homicide investigator interviewed appellant. During the course of that interview, appellant stated that she had not left her apartment at all during the evening of April 27 and that neither she nor anyone else had used the Lexis sedan that evening; however, records for appellant's and her son's cell phones showed that both phones were active in the same general area where Edwards' body was found.[1] At a second interview with investigators, appellant initially suggested that someone else had used her telephone and driven her Lexus. Later, appellant said she was forced by another party to go for a ride, though she could not identify the other party. During the interview, appellant also admitted to having a burn on her leg, which she attributed to running into a barbeque pit. An arson investigator, however, reviewed pictures of appellant's burns and determined that they were third-degree burns, which are consistent with prolonged exposure to high temperatures; thus, he concluded, appellant's burns were not caused by running into a barbeque pit.

## II.     Sufficiency of the Evidence

### A.     Standard of Review

In her first issue, appellant contends the evidence was legally insufficient to support her convictions for murder, arson, and tampering with evidence, because the State failed to put on any "direct evidence to prove that appellant was the perpetrator . . . of any of the crimes." In reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and

---

[1] At trial, an expert witness analyzed the cell phone data to reach this conclusion.

3

determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979)). We do not sit as thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to appellant's guilt, as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### B. Murder

As charged in this case, in order to convict appellant of murder, the State was required to prove that appellant either intentionally or knowingly caused Edwards' death, or intentionally caused serious bodily injury to Edwards by shooting him with a firearm, an act clearly dangerous to human life. *See* Tex. Penal Code § 19.02(b)(1). Appellant argues principally that only circumstantial evidence was presented at trial to substantiate her conviction for murder; however, even for an offense as serious as murder, "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In cases where the available evidence is circumstantial in nature, "it is not necessary that every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined

4

and cumulative force of all the incriminating circumstances.'" *Temple v. State,* 390 S.W.3d 341, 359–60 (Tex. Crim. App. 2013) (quoting *Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

Here, the circumstantial evidence presented by the State included cell phone records, which placed appellant and her son in the area of the burned vehicle at the time of the incident; video evidence, which showed a black Lexus sedan (similar to one used by appellant) circling the block near where Edwards' body was discovered and someone running from the scene of the burning vehicle; the presence of a substantial burn on appellant's leg, which the State contended could have been caused by high temperatures such as those produced by a burning vehicle but not by brief contact with a barbeque pit; several inconsistent statements made by appellant to investigators; and several statements appellant made to witnesses about killing Edwards and her attempt to secure a gun before the murder, which served to demonstrate motive and intent. Additionally, the jury was able to observe appellant's shifting explanations during the videotaped interviews with officers.

Having reviewed the record in the light most favorable to the verdict, we hold the jury rationally could have found appellant guilty of murder beyond a reasonable doubt. *See Ford v. State*, 444 S.W.3d 171, 181 (Tex. App.—San Antonio 2014) (detailing circumstantial evidence supporting defendant's murder conviction), *aff'd*, 477 S.W.3d 321 (Tex. Crim. App. 2015). The combined and cumulative force of the incriminating circumstances presented by the State point toward appellant's guilt. *See Temple,* 390 S.W.3d at 359–60.

## C.    Arson

Appellant similarly argues that mere circumstantial evidence was presented at trial to substantiate her conviction for arson. In order to convict appellant of

arson, the State was required to prove that appellant unlawfully started a fire by igniting a flammable liquid with the intent to destroy or damage a vehicle owned by Edwards and knowing either that the vehicle was within the Houston city limits or had within it property belonging to another. *See* Tex. Penal Code § 28.02(a)(2)(A), (E).

At trial, the State presented evidence regarding the location where the SUV was found burning and evidence indicating that the fire was the result of an intentional act. Specifically, evidence reflected that containers of ignitable fluids were discovered around the vehicle. Furthermore, the State presented cell phone records, indicating appellant was in the area at the time of the event; video evidence, showing a black Lexus sedan like the one appellant used circling the block and someone running from the scene of the burning vehicle; testimony appellant had discussed killing Edwards, whose body was found in the rear of the burned SUV; and evidence appellant had likely endured contact with high temperatures like those associated with a burning car. Additionally, the State introduced photographs of the vehicle as it was found showing a considerable amount of property inside the SUV as well as Edwards himself, who is wearing clothes in the photographs. The photographs further show downtown Houston nearby in the background. Having reviewed the record in the light most favorable to the verdict, we hold the jury rationally could have found appellant guilty of arson as charged.

### D. Tampering with Evidence

Finally, appellant argues no direct evidence was presented that she tampered with evidence. In order to convict appellant of evidence tampering, the State was required to prove that appellant unlawfully altered, destroyed or concealed a human corpse, knowing a murder had been committed, with the intent to impair its

6

availability as evidence. *See* Tex. Penal Code § 37.09. The jury could well have considered all of the evidence discussed above concerning the convictions for murder and arson in concluding that appellant endeavored to conceal proof of her crime. Having reviewed the record in the light most favorable to the verdict, we hold the jury rationally could have found appellant guilty of tampering with evidence beyond a reasonable doubt. Accordingly, we overrule appellant's first issue.

### III. Motion to Suppress

In her second issue, appellant contends that the trial court erred in denying her motion to suppress a portion of her recorded statement to police wherein she contends she invoked her right to counsel. The videotape in question actually contained two separate references to an attorney. The trial court agreed to exclude the second reference, in which appellant specifically requested to speak to an attorney. The first reference came in an exchange with an investigator. Appellant began, "I think I need a . . . ." before trailing off and not finishing the sentence. Then she said, "I don't know if I should be talking with someone or talking with a lawyer or what or . . . . I just don't know right now." The investigator replied, "That's up to you." Appellant then said, "I don't know. I really don't," and the interview continued for several more minutes before appellant made a definitive request to speak to a lawyer.

We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon,* 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts" and review de novo the court's application of the law to the facts. *Id.* We view the

7

evidence in the light most favorable to the trial court's ruling. *Wiede v. State,* 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). The trial court is the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony." *St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State,* 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We sustain the trial court's ruling only if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State,* 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

Under the Fifth Amendment to the United States Constitution, among the rights the police must advise a suspect whom they have arrested is the right to have counsel present during any police-initiated interrogation. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). Once a suspect invokes her Fifth Amendment right to counsel, interrogation must cease until counsel has been provided or the suspect herself reinitiates a dialogue. *Id*. Not every mention of a lawyer, however, constitutes an invocation of the right to counsel; an ambiguous or equivocal statement does not even require officers to halt the interrogation or even seek clarification. *Id*. Whether a particular mention of a lawyer constitutes a clear invocation depends upon the contents of the statement itself and the totality of the surrounding circumstances. The test is objective in nature, i.e., "the suspect must articulate [a] desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. at 892-93 (quoting *Davis v. United States*, 512 U.S. 452, 458-59 (1994)).

Here, appellant's statement clearly indicated she was wondering whether she should speak to lawyer but had not yet decided to ask for one. The investigator

even reassured appellant that the decision was up to her, to which she responded she really did not know at that point. It was not until a few minutes later that appellant actually requested counsel. Even assuming that the Fifth Amendment applied at the time of appellant's statement, this exchange did not constitute a clear invocation of the right to counsel but was at best an ambiguous and equivocal statement.[2] *See, e.g., Morrow v. State*, No. 03–13–00175–CR, 2015 WL 1216956, at \*4-5 (Tex. App.—Austin March 13, 2015, no pet.) (mem. op., not designated for publication) (holding defendant's statement, "I don't know if I need an attorney or not," was not an unequivocal invocation of the Fifth Amendment right). We conclude that a reasonable officer would not have understood appellant's statement as a request for an attorney. Accordingly, the trial court did not err in denying that portion of appellant's motion to suppress, and we overrule her second issue.

We affirm the judgment of the trial court.

/s/    Martha Hill Jamison
Justice

Panel consists of Justices Boyce, Christopher, and Jamison.
Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[2] The State additionally points out that appellant was not under arrest at the time of her statement.